IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

KRISTI HALVORSON       )
and STEVEN KEPPLER,     )
               )
    Plaintiffs,      ) TC-MD 130289D
               )
   v.          )
               )
CLACKAMAS COUNTY ASSESSOR,  )
               )
    Defendant.     ) **FINAL DECISION**

The court entered its Decision in the above-entitled matter on January 13, 2014. The

court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14

days after its Decision was entered. The court's Final Decision incorporates its Decision without

change.

Plaintiffs appeal the 2010-11, 2011-12 and 2012-13 real market value of their property

identified as Account 00804295 (subject property). A trial was held in the Oregon Tax Court

Mediation Center, Salem, Oregon on November 13, 2013. W. Scott Phinney, Attorney at Law,

appeared on behalf of Plaintiffs. Mona St. Clair (St. Clair), real estate broker, testified on behalf

of Plaintiffs. Todd Cooper (Cooper), registered Oregon appraiser, appeared and testified on

behalf of Defendant.

Plaintiffs' Exhibit 1 and Rebuttal Exhibit 2 and Defendant's Exhibits A through F were

admitted without objection.

## I. STATEMENT OF FACTS

The parties stipulated that the subject property is a 3,141 square foot single family home

built in 1993 and located in Sherwood, Oregon on 10.24 acres. The parties agreed that based on

their inspection the subject property was in good condition – Cooper testified that the subject

property had "fir flooring in the kitchen," "sunken living room with built-in entertainment center," "marble and tile floors in the master bathroom" and "wainscoting" – at the time of each tax assessment and the subject property had not been remodeled or updated. St. Clair testified that the subject property's kitchen which would not "appeal to current buyers" and would "cost between $50,000 and $80,000" to remodel and a bathroom "remodel" would cost between "$20,000 and $40,000." The parties agreed that the third floor of the dwelling, identified as the "viewing room" by St. Clair, is approximately 18 feet by 13 feet carpeted and could be used as a "craft room" or "office." Cooper referenced the subject property's interior photographs that he included in his appraisal report. (Def's Ex E at 16-20.) The parties agreed that a "40 foot by 60 foot pole barn" is the only outbuilding located on the subject property. St. Clair testified that the subject property is not "set up for horses; there is no arena." Cooper described the subject property as "a unique setting," that was "completely secluded in location even though surrounded by other developed parcels" with "nice landscaping and multiple water features."

Cooper testified that even though his appraisal report included the cost approach, he gave the "cost approach little weight" and like St. Clair relied on sales of properties that he identified as comparable to the subject property to determine the subject property's real market value for each of the tax years.

A.    *2012-13 tax year*

St. Clair testified that she selected four sales of property that she described as "best sales, not perfect" located in Sherwood "on five to ten acres" that sold within "six months each side of the assessment date." She testified that she "drove by" each comparable property. St. Clair described her approach as a "bracketing analysis." She testified that "ideally" the subject property's real market value should be "in the middle of the bracketing." St. Clair testified that

her "broker's opinion of value * * * is between $528,000 and $548,000, as of January 1, 2012." (*See* Ptfs' Ex 1 at 7.) St. Clair testified about each of the four properties, stating that she computed a price per square foot based on "living square feet, not including garage or unfinished area, e.g. basement." Using that computed (price per square foot for each property, totaled and divided by four) average price per square foot, St. Clair computed the subject property's real market value to be $538,085. (*See id*. at 8.)

In response to Cooper's question about her bracketing analysis, St. Clair responded that she does not make adjustments to the comparable sale prices because "it is easy to manipulate the adjustment amounts" and there "isn't agreement on how to assign value to even a bedroom – cost versus value." St. Clair testified that she relied on "raw data."

Cooper testified that he selected six properties as comparable to the subject property, determining adjusted sale prices ranging from $496,095 to $751,525. (Def's Ex E at 4.) He testified that he "attempted to inspect all comparable properties" but many "were gated with long driveways," requiring him to rely on "MLS photos." Cooper testified that a comparable property's sale price was adjusted, if necessary, for lot size, sale date, neighborhood, year built, quality, condition, square footage, garage square footage, baths, fireplace(s), view and outbuildings. (*Id*.) Cooper stated that the sale date of "time adjustment" was based on "market indicators" for each tax year: for the 2010-11 tax year, the market indicator based on 2009 sales was a decline of 12 percent; for the 2011-12 tax year, the market indicator based on 2010 sales was a decline of 10 percent; and for the 2012-13 tax year, the market indicator based on 2011 sales was a decline of 3 percent. Cooper testified that the "age bracket" of the properties ranged from 1975 to 2006. (*Id*.) Cooper testified that comparables 2 and 4 are "outside Sherwood, closer to Stafford with better access to the freeway" than the subject property. He testified that

"only one comparable property" had a basement. Cooper testified that his "final estimate of value for the subject property" was "$660,000 as of [January 1, 2012]." (*Id*. at 15.)

In response to questions, Cooper admitted that he incorrectly added value for a garage adjustment rather than subtract value. He explained that he relied on "county records," not "MLS" for square footage if there was a difference. Cooper was asked why he made a "$25,000 Mt. Hood adjustment" when in another year "he used $35,000." He explained that based on "county records" a "Mt. Hood view adjustment" was "worth less in 2013 than 2010."

B.      *2011-12 tax year*

St. Clair testified that she selected five comparable properties, concluding an indicated value "between $417,000 and $437,000, as of January 1, 2011." (Ptfs' Ex 1 at 13.) St. Clair testified about each of the five comparable properties. Her description of each comparable property included year built, with four of the five comparable properties built in early 1970s and three of the five comparable properties located on approximately five acres. (*Id*. at 14.) After computing an average price per square foot of $135.89, St. Clair testified that she concluded the subject property's real market value to be $426,830. (*See id*.)

Cooper testified that he selected five properties as comparable to the subject property, determining adjusted sale prices ranging from $636,225 to $739,150. (Def's Ex C at 4.) He testified that a comparable property's sale price was adjusted if necessary for lot size, sale date, quality, condition, square footage, garage square footage, baths, fireplace(s), view and outbuildings. (*Id*.) He testified that the "age bracket" of the properties ranged from 1981 to 1998. (*Id*.) Cooper testified that comparables 4 and 5 are "most like the subject property" because neither property has a basement. He testified that his "final estimate of value for the subject property" was "$669,000 as of January 1, 2011." (*Id*. at 15.)

In response to questions, Cooper admitted that he incorrectly added value for a garage adjustment rather than subtract value and that one of the comparables had an additional one-half bath but he failed to make an adjustment. The parties discussed Cooper's adjustment for land where grapes are planted or cultivated but failure to do so when the plants were newly planted.

C.      *2010-11 tax year*

St. Clair testified that she selected seven comparable properties, concluding an indicated value "between $485,000 and $505,000, as of January 1, 2010." (Ptfs' Ex 1 at 20.) St. Clair testified about each of the seven comparable properties. She testified that comparable 3, a 3.121 square foot home built in 1970 and subsequently remodeled that is located on 9.77 acres and sold for $399,900 was "pretty comparable" to the subject property and comparable 5, a 4,978 square foot home built in 1993 that is located on 5.10 acres and sold for $485,000, was a "nice comp, house was a little bigger, views the same as subject property." (*Id*. at 21.) After computing an average price per square foot of $157.54, St. Clair testified that she concluded the subject property's real market value to be $494,833. (*See id*.)

In response to Cooper's questions, St. Clair admitted that she made a mistake in computing the living square feet of comparable 1 and included a "partially finished area" in the total living square feet of comparable 5. Cooper asked St. Clair about comparable 2 that was a short sale of a "daylight ranch" that "backs to train tracks." St. Clair testified that the "MLS states that it had been nearly two years with no train traffic" and "it would not be an adverse effect unless the track was being used."

Cooper testified that the adjusted sales prices of his five comparable properties ranged from $670,340 to $804,700. (Def's Ex A at 4.) He testified that a comparable property's sale price was adjusted if necessary for lot size, sale date, quality, condition, square footage, garage

square footage, baths, fireplace(s), view and "external amenities." (*Id*.) Cooper testified that each adjustment amount was "market derived from extraction or paired sales." He testified that the "age bracket" of the properties ranged from 1975 to 2001. (*Id*.) Cooper testified that his "estimated market value as of January 1, 2010 was $754,000. (*Id*. at 15.)

D.      *Valuation approaches*

The parties agreed that in Cooper's words "it was not easy to find comparables" and the subject property is a "complex property." He testified that his comparable properties are "somewhat newer than" Plaintiffs' comparable properties. Cooper was asked numerous questions about his adjustments – how he determined the amounts and the specific amount of an adjustment, e.g., condition, location, view; he responded that the adjustment amounts were based on "county records; MLS; on-line photos; on-line virtual tours and appraiser judgment." Cooper admitted that he did not include his "paired sales analysis" in his appraisal report. He stated that he "verified all sales" but did not include "MLS in his appraisal report." Plaintiffs offered Rebuttal Exhibit 2, MLS listings for 10 of the comparable properties selected by Cooper. Cooper explained that his approach differed from St. Clair's, stating that she "used math and averages" and he made "individual adjustments to each property to make comparable as possible to the subject property." Plaintiffs challenged Cooper on the percentage of the adjustments to the sale price, noting a "62 percent adjustment of sale price" made to comparable sale 5 for tax year 2011-12.

Cooper asked St. Clair why 13 of the 16 comparable properties she identified were older than the subject property; St. Clair responded that those were the sale transactions she found and testified that "older homes that are updated are more like new homes." Cooper questioned St. Clair, asking whether "five short sales and two bank owned properties" were "good indicators of

value?" St. Clair responded, stating yes, "a seller wants to sell and sellers want the most money they can get." Cooper testified that he "used 16 comparables, average age 1989 – 1990." He testified that St. Clair included "four fixers" in her comparable properties.

St. Clair confirmed that the subject property's indicated real market value included the outbuilding and was computed based on the average price per square foot of the comparable properties' unadjusted selling prices. Cooper challenged St. Clair's approach, stating that she was "mixing above and below grade, finished and unfinished" square footage in the amount of "living square footage."

## II. ANALYSIS

The issue before the court is the 2012-13 real market value of Plaintiff's property. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1),[1] which reads: "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." The assessment date for the 2012-13 tax year was January 1, 2012. ORS 308.007(2).

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2). There are three approaches of value that must be considered, although all three may not be applicable

/ / /

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2011 and its references to the Oregon Administrative Rules (OAR) are to the current version.

in a given case. OAR 150-308.205-(A)(2)(a). The three approaches are: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. *Id.*

In a case such as this, the comparable sales approach may be used to value improved properties. Appraisal Institute, *The Appraisal of Real Estate* 297 (132th ed 2008). In determining real market value, the court looks for "arm's length sale transactions of property similar in size, quality, age and location" to the subject property in order to reach a correct real market value. *Richardson*, 2003 WL 21263620 at * 3. The legislature requires real market value to be determined in all cases by "methods and procedures in accordance with rules adopted by the Department of Revenue." ORS 308.205(2). The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), stating that: "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

Plaintiffs did not determine the subject property's real market value using any of the three approaches of value. Plaintiffs relied primarily on "actual market transactions of property" that were identified as "comparable to the subject" property without any adjustments for time, location, age, quality or similar characteristics. "Ideally, if all comparable properties are identical to the subject property, no adjustments will be required. However, this is rarely the case." Appraisal Institute, *The Appraisal of Real Estate*, at 307. Each of the properties that St. Clair selected were built in a year other than 1993 (the year the subject property was built), located on lots that varied in size from 5 acres to 15 acres (subject property is located on 10.24 acres), had living area that ranged from 1,642 to 5,576 (the subject property has 3,141 square feet of living area), had garage sizes varying from no garage to three car garage (the subject property

has an oversized two car garage) and had various other buildings that were generally described as "out buildings," "shop," "hot tub," "barn," or "Mt. Hood" (the subject property's outbuilding is described as a shop.) (Ptfs' Ex 1 at 8, 14, 21.) Using an unadjusted sales price, St. Clair computed a price per square foot for each reported sale transaction. Based on the sale transactions for each tax year, an average price per square foot was computed. That average price per square foot was multiplied by the subject property's living area square feet to determine the subject property's real market value as of the assessment date. Even though St. Clair testified that she used her professional judgment to select properties comparable to the subject property, St. Clair computed an average price per square foot and applied that average price per square foot to determine the subject property's real market value. Application of a computed average to determine real market value is a mathematical computation, void of professional qualitative considerations. Given the diverse characteristics of the properties selected, using a computed unadjusted average price per square foot to determine the subject property's real market value as of the assessment date results in an inconclusive indicator of value.

As the party seeking affirmative relief, Plaintiffs bear the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). Plaintiffs must present the greater weight of evidence to support their requested real market value reduction. Plaintiffs' evidence in support of their requested real market value reduction is inconclusive. Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Plaintiffs have failed to carry their burden of proof.

Even though the burden of proof has not shifted to Defendant under ORS 305.427, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence

before the court, without regard to the values pleaded by the parties." ORS 305.412. For tax years 2010-11 and 2011-12, Cooper determined real market values for the subject property that were less than the tax roll value. Even if the court were to accept Cooper's determinations, those values do not meet the statutory requirements of ORS 305.288(1)[2] and Plaintiffs are not aggrieved. For tax year 2012-11, Cooper determined that the subject property's real market value was $660,000, a real market value less than the tax roll value. Two of the four properties that Cooper identified as comparable to the subject property were located outside Sherwood. One comparable property was located less than two miles from the subject property and the other property located in Sherwood was a 1975 built home on 10.02 acres. Cooper's indicated real market value for the subject property is within the range of the adjusted sales prices of those two Sherwood properties. The court accepts Cooper's determination of the subject property's real market value.

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiffs failed to carry their burden of proof. The court accepts Defendant's determination of the subject property's real market value for tax year 2012-13. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal for tax years 2010-11 and 2011-12 is denied.

/ / /

/ / /

/ / /

/ / /

---

[2] ORS 305.288(1) states in pertinent part:

"The change or correction requested is a change in value for the property for the tax year and it is asserted in the request and determined by the tax court that the difference between the real market value of the property for the tax year and the real market value on the assessment and tax roll for the tax year is equal to or greater than 20 percent."

IT IS FURTHER DECIDED that the 2012-13 real market value of Plaintiffs' property identified as Account 00804295 is $660,000.

Dated this ___ day of January, 2014.


_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on January 31, 2014. The court filed and entered this document on January 31, 2014.*